UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ADELSO ROMEO BRAVO PEREZ,

                                Petitioner,                    9:26-cv-205
                                                          (ECC)

v.

PAMELA BONDI, in her official capacity as U.S.
Attorney General; PHILIP RHONEY, in his
official capacity as Deputy Field Office Director,
Buffalo Field Office, U.S. Immigration &
Customs Enforcement; TAMMY MARICH, in her
official capacity as Field Office Director, Buffalo
Field Office, U.S. Immigration & Customs
Enforcement; TODD LYONS, in his official
capacity as Acting Director, U.S. Immigration and
Customs Enforcement; and KRISTI NOEM, in her
official capacity as Secretary of Homeland
Security,

                                Respondents.

---

Matthew K. Borowski, Esq., *for Petitioner*
Emer M. Stack, Assistant United States Attorney, *for Respondents*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM DECISION AND ORDER

On February 10, 2026, Petitioner Adelso Romeo Bravo Perez, a noncitizen who has been present in the United States since 2006 or 2007, was taken into custody by Immigration and Customs Enforcement (ICE).  Petition (Pet.) ¶¶ 1, 2, 6, Dkt. No. 1.  On the same day, while detained at the ICE Enforcement and Removal Operations Sub Office in Mattydale, New York, Petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  *Id.* at ¶¶ 7, 14, 18, 20. Petitioner seeks immediate release and an order that he not be re-detained "without a pre-deprivation hearing with adequate advance notice, or in the alternative, that he be released

"pending a bond hearing to be held pursuant to 8 U.S.C. § 1226(a) within 7 days at which the government bears the burden to demonstrate, by clear and convincing evidence, that the petitioner is a danger to the community or a flight risk." *Id.* at 17-18.[1]  Plaintiff also seeks a declaration that "ICE's July 8 policy and the BIA's *Matter of Yajure Hurtado* decision" are unlawful and seeks attorney's fees and costs under the Equal Access to Justice Act (EAJA), as amended, 28 U.S.C. § 2412. *Id.* at 17.

On February 10, 2026, the same day that the petition was filed, the Court issued an order directing Respondents to show cause why the petition should not be granted, setting a briefing schedule, scheduling oral argument for February 13, 2026, and prohibiting Respondents from moving Petitioner outside the jurisdiction of the Northern and Western Districts of New York while the petition is pending.  Dkt. No. 5.

After considering briefing from the parties, Dkt. Nos. 1, 6, 7, 8, 9, and arguments made during a hearing, on February 20, 2026, the Court issued an order granting the Petition to the extent that the Court ordered Respondents to afford Petitioner an individualized bond hearing before an immigration judge within 10 days of the order.  Dkt. No. 10.  A bond hearing was held on February 27, 2026, and bond was set.  Dkt. No. 11.  This decision provides additional reasoning for the February 20, 2026 order and addresses Petitioner's request for EAJA fees and costs.

I.      **Background**

Petitioner, a citizen of Guatemala, entered the United States without inspection in 2006 or 2007.  Pet. ¶ 1.  On August 18, 2023, he filed an application for asylum and was issued a work permit.  *Id.* at ¶ 5.  At a hearing on February 13, 2026, counsel for Petitioner represented that the asylum application is still pending.

---

[1] Citations to page numbers are to the pages generated by the CM/ECF system.

On February 10, 2026, Petitioner was taken into custody after a traffic stop. *Id.* at ¶ 6. On the same day, he was served with a Warrant for Arrest of Alien, I-200 citing to Sections 236 (8 U.S.C. § 1226) and 287 (8 U.S.C. §1357) of the Immigration and Naturalization Act, and not mentioning Section 235 (8 U.S.C. §1225(b)(2)(A)). Dkt. No. 6-4 at 4. He was also served with a Notice to Appear, Form I-862 stating that he was subject to removal pursuant to Sections 212(a)(6)(A)(i) and (a)(7)(A)(i)(I) of the Immigration and Nationality Act. Dkt. No. 6-4 at 5, 8.

## II.    JURISDICTION

"'28 U.S.C. § 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws . . . of the United States.'"" *Gaspar v. Akshar,* No. 9:26-cv-118 (BKS), 2026 WL 699369, at *1 (N.D.N.Y. Feb. 17, 2026) (quoting *Wang v. Ashcroft,* 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). In addition, "'[f]ederal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention.'" *Id.* (quoting *Lopez v. Sessions,* No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim,* 538 U.S. 510, 516-17 (2003)).

## III.    DISCUSSION

### A.  Statutory Basis for Detention

Petitioner argues that the applicable statute for his detention is 8 U.S.C. § 1226(a). "Detention pending adjudication of removal under Section 1226 is discretionary and affords noncitizens detained thereunder the right to an initial determination as to eligibility for release and the opportunity for a bond hearing upon detention." *Tumba Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *2 (S.D.N.Y. Nov. 4, 2025). In contrast, Respondents argue that 8 U.S.C. § 1225(b)(2)(A) applies. Detention under that provision is mandatory "with rare exceptions not

relevant here." *Cardenas v. Almodovar,* No. 25-cv-9169, 2025 WL 3215573, at *1 (S.D.N.Y Nov. 18, 2025).

This Court previously rejected Respondents' argument and decided that Section 1226(a) applies to the detention of noncitizens who are living in the United States after an earlier illegal entry.[2] *See Perdomo Perez v. Akshar,* No. 9:26-cv-120, Dkt. No. 19 at 4-5 (N.D.N.Y. Mar. 5, 2026) (citing cases).  As a result, Petitioner, who entered the country almost 20 years ago, was not seeking admission when he was arrested, and Section 1226(a), not Section 1225(b)(2)(A), applies. *See id.* (citing cases).

Respondents acknowledge that this Court previously rejected its argument in *Perdomo Perez,* but argue that case is distinguishable because, unlike the *Perdomo Perez* petitioner, this is Petitioner's first detention.  Dkt. No. 6 at 6.   Respondents cite no legal authority supporting this argument.  In addition, "courts have rejected lack of contact with immigration authorities as a basis for applying the mandatory detention provisions of Section 1225." *Hassan v. Bondi,* No. 9:26-cv-319, at 6-7 (BKS) (N.D.N.Y. Apr. 1, 2026) (citing *Acuapan v. Bondi*, No. 26-cv-00384, 2026 WL 507889, at *3 (E.D.N.Y. Feb. 24, 2026) ("The fact that Petitioner did not have contact with immigration authorities upon re-entry . . . has no bearing on the statutory basis for his detention, as courts have consistently held that noncitizens who enter without such contact are still subject to § 1226.") (citing cases); *R.P.L. v. Maldonado*, No. 25-cv-6886, 2025 WL 3731864, at *1–2,

---

[2]   There is no binding authority from the Supreme Court or the Second Circuit, and the three Circuits that have considered this issue have reached different conclusions.  The Fifth and Eighth Circuits agreed with the Government's position. *Avila v. Bondi,* No. 25-3248, --F.4th--, 2026 WL 819258, at *6  (8th Cir. Mar. 25, 2026); *Buenrostro-Mendez v. Bondi,*  No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).  But, in the context of whether the Government was likely to succeed on the merits of its argument that noncitizens arrested by ICE without a warrant could be held under Section 1225(b)(2)(A), the Seventh Circuit concluded that the Government was not likely to succeed on the merits of its argument. *Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1062 (7th Cir. 2025).

(E.D.N.Y. Dec. 26, 2025) (finding Section 1226 applied where the petitioner had been living in the United States for "decades" and whose 2025 arrest was "his first encounter with immigration authorities")).  As a result, the fact that this is Petitioner's first immigration detention does not change the decision to apply Section 1226.[3]

### B.  Required Due Process

The next question is whether Petitioner's detention violates due process.  Noncitizens, like Petitioner, are protected by the Fifth Amendment's Due Process Clause guaranteeing that they cannot be deprived of liberty "without due process of law." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690.  In addition, that liberty interest protects people from detention without "notice of the case against him and opportunity to meet it." *Matthews v. Eldridge,* 424 U.S. 319, 348 (1976).  "Habeas review is available to challenge 'the lawfulness of detention when it is first imposed' as well as 'to challenge whether, at some point, an ongoing detention has become unlawful.'" *Gaspar,* 2026 WL 699369, at * 7 (quoting *Velasco Lopez v. Decker,* 978 F.3d 842, 850 (2d Cir. 2020)).  "'The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review.'" *Id.* at 15-16 (quoting *Velasco Lopez,* 978 F.3d at 850 (additional citation omitted)).

Courts apply the three-factor balancing test articulated in *Matthews*: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of

---

[3] The fact that ICE served Petitioner with a Form I-200 arrest warrant further supports this conclusion.  *See Hassan,* Dkt. No. 10 at 7-8) (concluding that the warrant "undermines Respondents' position that Petitioner is being detained pursuant to Section 1225(b)(2)" because the warrant cites to provisions corresponding to Section 1226, not Section 1225).

such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar,* 2026 WL 699369, at *8 (quoting *Velasco Lopez,* 978 F.3d at 850) (in turn quoting *Matthews,* 424 U.S. at 335)).

Regarding the first factor, Petitioner has established a liberty interest in being released from imprisonment. *See Crespo Tacuri v. Genalo,* No. 25-cv-6896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026) (concluding that Petitioner had a "cognizable private interest in being freed from unlawful detention") (citing, among others, *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government.")).

Regarding the second factor, Respondents have not provided any evidence that Petitioner had an opportunity to post bond or argue for release on conditions. In addition, there is nothing in the record indicating that (1) Perez is a risk of flight or a danger to the community, or (2) anyone considered whether, given his specific situation, Perez was a risk of flight or a danger to the community. As a result, there is a high risk of erroneous deprivation of Petitioner's liberty. *See Gaspar,* 2026 WL 699369, at *8 ("The risk of erroneous deprivation of Petitioner's liberty is therefore high.") (citing *Valdez v. Joyce,* 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest.") and *Singh,* 2026 WL 233216, at *9 ("finding 'the risk of erroneous deprivation of Petitioner's liberty interest' was 'high' where it was undisputed 'that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner in December 2025, and there was no change in circumstances from the time

6

DHS released Petitioner on his own recognizance in March 2024 to his re-arrest and detention in December 2025")).

Regarding the third factor—the Government's "interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community"—the Court concludes that interest is low given that there is no evidence that Petitioner is a danger to the community or a flight risk, Petitioner has been living in the United States for almost 20 years, and, Petitioner was issued a work permit in 2023 after he filed an asylum petition. *See Hassan,* 9:26-cv-319, Dkt. No. 10 at *12 (concluding "that Respondent's interest in Petitioner's detention is minimal") (citation omitted).

The Court therefore finds that Petitioner's detention violates his rights under the Due Process Clause of the Fifth Amendment.

## C.     Remedy

Petitioner seeks immediate release or, in the alternative, that he be released "pending a bond hearing to be held pursuant to 8 U.S.C. § 1226(a) within 7 days at which the government bears the burden to demonstrate, by clear and convincing evidence, that the petitioner is a danger to the community or a flight risk." Pet. at 17-18.   The Government responds that "if the Court finds Petitioners' detention is not authorized by 8 U.S.C. § 1225(b)(2)(A), then the appropriate remedy is a bond hearing at which Petitioner bears the burden of proof." Dkt. No. 8 at 1.

Under the circumstances of this case—where Petitioner did not have any interaction with immigration authorities when he entered the country, and he filed the Petition when he had been detained for less than one day—the Court finds that the appropriate remedy is a bond hearing. *See Hassan v. Bondi,* No. 9:26-cv-319, Dkt. No. 10 at 13 (BKS) (N.D.N.Y. Apr. 1, 2026) (ordering a bond hearing before an immigration judge) (citing *Romero Perez v. Francis,* No. 25-cv-8112, 2025

WL 3110459, at *3 (S.D.N.Y. Nov. 6, 2025) (same); *Sun v. Almodova,* No. 25-cv-9262, 2025 WL 3241268, at *3 (S.D.N.Y. Nov. 20, 2025) (same)).

In addition, Respondents are enjoined from denying Petitioner bond in any subsequent proceeding on the grounds that he must be detained under 8 U.S.C. 1225(b)(2)(A) absent a change in relevant circumstances. *See Rodriguez-Acurio,* 2025 WL 3314420, at *32-33 (concluding that "[t]his additional relief is necessary in order to ensure that the release of [Petitioner] pursuant to this Opinion and Order is not rendered meaningless" and, "[a]s a result, the relief ordered here falls within the 'core of habeas.'") (quoting *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 119 (2020)).

For these reasons, it is

**ORDERED** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED**; and it is further

**ORDERED** that the Court's prior Order, Dkt. No. 10, is incorporated; and it is further

**ORDERED** that Petitioner's request for reasonable attorney's fees and costs under the Equal Access to Justice Act  is **GRANTED** and any request for such fees and costs shall be filed no later than 30 days after the 60-day appeal period runs under Fed. R. App. P. 4(a)(1)(B), and any response is due within 21 days after Petitioner's application is filed; and it is further

**ORDERED** that the Clerk of the Court enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: April 7, 2026

Elizabeth C. Coombe
U.S. District Judge